**FILED**

Feb 22 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ CharityW          DEPUTY

Collette Stark (*Pro se*)
2175 Cowley Way
San Diego, CA 92110
(619) 347-0726
videosolutions@me.com

Anton Ewing (*Pro se*)
3077 B Clairemont Drive #372
San Diego, CA 92117
(619) 719-9640
anton@antonewing.com

Plaintiffs

# THE UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Collette Stark, an individual,<br>Anton Ewing, an individual,<br><br>   Plaintiff,<br><br>  vs.<br><br>Stuart Stall, an individual,<br><br><br>   Defendant. | Civil Case No. **'19CV0366 AJB NLS**<br><br>**COMPLAINT**<br><br><br>**TCPA 47 USC §227(b)(1)(A)**<br>**TCPA 47 USC §227(c)(5)**<br>**CIPA PC §637.2 and §632.7** |

May it please the Court, Plaintiff Anton Ewing (herein "Plaintiff Ewing" or

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 1

19CV

"Ewing") and Plaintiff Collette Stark (herein "Stark"), for this complaint against Defendant Stuart Stall (herein "Stall" or "Defendant") alleges as follows:

## I.   INTRODUCTION

1.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to each Plaintiff's DNC registered cellular phone and home phone through the use of an ATDS is expressly alleged against Defendant Stuart Stall.

2.     The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing call to each Plaintiff's phone without disclosure of the recording is alleged against Defendant Stall.

3.     <u>Nature of Action</u>. Something is rotten in Coronado, to wit: Stall has been bombarding Mr. Ewing and Ms. Stark, without their consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS as defined by the 9th Circuit in the *Crunch* case.  Mr. Ewing begged Stall to stop these illegal calls, but since then, Defendant Stall and its hired and controlled agents, including but not limited to Global Marketing, have robocalled Plaintiff Ewing and Stark dozens more times.  Mr. Ewing and Ms. Stark bring this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Stall, to change their ways.

## II. PARTIES

4.      Plaintiffs Anton Ewing and Collette Stark are citizens of California who

conduct business in California, in this District.

5.      Defendant Stall is a resident of Coronado, California at 667 Pomona Ave,

Coronado, CA 92118 and licensed real estate broker.

## III. JURISDICTION AND VENUE

6.      Jurisdiction. This Court has federal-question subject matter jurisdiction over

the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a

federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This

Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising

under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

17200 *et seq.*, Civil Code §1770(a)(22)(A),  and California Invasion of Privacy

Act, Penal Code §637.2, §632.7 because those claims:

      a.  arises from the same nucleus of operative fact, i.e., Defendant's

          telemarketing robocalls to Plaintiff;

      b.  adds little complexity to the case; and

      c.  relies on the same nucleus of facts, so it's unlikely to predominate

          over the TCPA claims.

7.      Personal Jurisdiction. This Court has personal jurisdiction over STALL

19CV

because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, STALL made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Stall has also subjected himself to personal jurisdiction in California because he is running said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b). Stall, through their dba's and agents, initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to Stall marketers and others in a knowingly illegal manner.  California Civil Code §1770(a)(22)(A) expressly prohibits the prerecorded messages that STALL and Stall and its agents sent to Plaintiff.

8.     Plaintiff Ewing was called on his cellular phone of 619-888-1296 by Stall. Plaintiff was called nine times beginning on or about December, 2018, from 844-853-7355, numbers owned, used and controlled by Stall and its agents, with a prerecorded message that stated *"Hello, this is US Global Real Estate…"* and then "Dave" came on the line and introduced himself as being with "Global Realty." After many personal questions were asked and answered, Dave transferred the call to another Stall person.

9.     Plaintiff received another robo call with a prerecorded message from "Robert" February 7, 2019.

10.    "Where, as here, there is no applicable federal statute governing personal

jurisdiction, the district court applies the law of the state in which the district court

sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316,

1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is

coextensive with federal due process requirements, the jurisdiction analyses under

state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing

Panavision, 141 F.3d at 1320).  Due process requires that Defendants must have

minimum contacts with the forum such that the assertion of jurisdiction in that

forum "'does not offend traditional notions of fair play and substantial justice.'"

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

11.     There are two types of personal jurisdiction: general and specific. *Daimler*

*AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general

jurisdiction to exist over a nonresident defendant . . . , the defendant must engage

in 'continuous and systematic general business contacts,' that 'approximate physical

presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft &*

*Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal

citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he

19CV

non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d]
some transaction with the forum or resident thereof; or perform some act by which
[it] purposefully avail[ed] [itself] of the privilege of conducting activities in the
forum, thereby invoking the benefits and protections of its laws; (2) the claim must
be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice,
i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found
specific jurisdiction in circumstances similar to this case. One court found personal
jurisdiction where the out-of-state defendant sent numerous unsolicited fax
advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay,
Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-
10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the
defendant operated a website that the California-plaintiff used, called and emailed
the plaintiff numerous times, and the plaintiff's claims arose out of those contacts.
*Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist.
LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013).  *Drew v.
Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist.
LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

12.  Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-
(2) because a substantial part of the events giving rise to the claims occurred in this

District and because Defendant Stall resides in, i.e., is subject to personal

jurisdiction in, this District.    STALL has purposefully directed its activities to

California and advertises that it does business in California.

## IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

13.    In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding telemarketing.

14.    The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party)

using an automatic telephone dialing system or an artificial or prerecorded voice…

to any telephone number assigned to a … cellular telephone service." 47 U.S.C.

§227(b)(1)(A)(iii).

15.    The TCPA makes it unlawful "to initiate any telephone call to any

residential telephone line using an artificial or prerecorded voice to deliver a

message without the prior express consent of the called party, unless the call is

initiated for emergency purposes, is made solely pursuant to the collection of a

debt owed to or guaranteed by the United States, or is exempted by rule or order"

of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16.    The TCPA provides a private cause of action to persons who receive calls in

violation of § 227(b). 47 U.S.C. § 227(b)(3).

17.    The TCPA makes it unlawful to make telemarketing solicitations to

19CV

telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

19.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the*

*Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

22.    FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24.    The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

19CV

25.     Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

26.     The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).  The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2) — has stated that a plaintiff, to establish a TCPA violation, "need only show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.

19CV

27.     "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012). Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." Id. (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

28.     Plaintiff Ewing alleges that Defendants Stall placed repeated automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) and home phone (619-798-2016) from their phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time in January 2019 and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim.

29.     "Half of all mobile calls are expected to be spam robocalls in 2019, according to call protection company First Orion, which analyzed data from 50

billion calls over the last 18 months. It found the percentage of spam phone calls has jumped from 3.7% of total calls in 2017 to 29.2% in 2018 — and it predicts that number will hit 44.6% by early 2019, and it will keep rising until half of all calls are spam by the year's end." https://www.marketwatch.com/story/heres-why-youre-getting-so-many-spam-phone-calls-2018-10-12

30.     In the alternative, fictitious ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by Stall to knowingly and intentionally make robo-dialed calls to Plaintiff Ewing with a pre-recorded voice message that was used for telemarketing purposes between June 30, 2019 and January 11, 2019. ABC, Inc has subsequently made illegal telemarketing calls to Ewing and discovery may very well lead to adding ABC, Inc as a defendant herein.

31.     California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages without advance written consent and Plaintiff provided no such consent.

32.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for
> its provisions limiting junk-fax transmissions.  A less-litigated
> part of the Act curtails the use of automated dialers and
> prerecorded messages to cell phones, whose subscribers often
> are billed by the minute as soon as the call is answered--and
> routing a call to voicemail counts as answering the call.  An
> automated call to a landline phone can be an annoyance; an
> automated call to a cell phone adds expense to annoyance.

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 12

19CV

*Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7ᵗʰ Cir. 2012)*

33.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

34.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting

that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

35.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants;

    C. and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong.**

36.     Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least four (5) times by Defendants.  In fact, Plaintiff expressly informed Defendants to cease and desist from all future telemarketing on the very first call. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir.

2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants prior to receiving the seriously harassing and annoying calls by Stall and by STALL.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.  In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls.  It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendants and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.  Additionally, Plaintiff Ewing has a clear warning on each and every page of his web domain that warns offenders that if you call, you will be sued.  In fact, Ewing had to remove his own phone number from his web page several years ago (please go ahead and verify this on the waybackmachine[1]) due the incessant, annoying and harassing calls by scam telemarketers like these defendants.  Moreover, a simple Google search of Ewing's phone number will yield page after page of warnings that

---

[1] Exact copy of web page in 2015:
https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

threaten a civil suit if you call.  And, Ewing has sent out hundreds of emails to

TCPA defense attorneys nationwide warning them that if their clients call Ewing's

phone, they will be sued.  Finally, Plaintiff is responsible to pay the bill on his

cellular phone, and to pay the bill for the electric utility company kilowatt-hour

power usage to recharge it. All of these injuries are particularized and specific to

Plaintiff and will be the same injuries suffered by Plaintiff.

**The "Traceable to the Conduct of Defendants" Prong**

37.     The second prong required to establish standing at the pleadings phase is

that Plaintiff must allege facts to show that their injury is traceable to the conduct

of Defendants. In the instant case, this prong is met by the fact that the calls to

Plaintiff's cellular phone and home phone (land line) were placed either by

Defendants directly, or by Defendants' agent at the express direction and control of

Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten

factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"**

**Prong**

38.     The third prong to establish standing at the pleadings phase requires Plaintiff

to allege facts to show that the injury is likely to be redressed by a favorable

judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a

request for damages for each call made by Defendants, as authorized by statute in

19CV

47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.

39.    "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" *Mbazomo*, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged

19CV

harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

40.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at

1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

41.    The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2) "using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

42.    First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009).  Plaintiff supports these allegations with activity logs from December 2018 to February 2019 documenting the calls (see above). This element is satisfied.

43.    Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS").  The TCPA defines ATDS to mean "equipment which has the

capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

44.    "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan*, the plaintiff's allegations supported the use of an ATDS. *Id.*  In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.*  This was enough to establish the defendant used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel*, the plaintiff alleged sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with

the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the

plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal

conclusions couched in fact" when asserting the "barrage of calls and . . .

frequency and pattern of the calls provide[d] the necessary factual support." No.

15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3

(N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.*, No.

13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D.

Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the

defendants directed calls specifically towards the plaintiff).

45.     Here, Plaintiff Ewing  and Plaintiff Stark allege that Defendant Stall

contacted them using a "telephone dialing system."  This is insufficient standing

alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional

facts. First, each of the calls are available to the Court as audio recordings of the

robotic voice message that initiated the calls. Second, the calls are impersonal

advertisements: they do not address Plaintiff personally and they advertise

Defendant's product. Third, Plaintiff declares that he has never heard of

Defendants, visited any location operated by Defendants prior to the harassing and

annoying calls, nor provided his cellular telephone numbers to Defendants or

consented to receive calls from Defendants.  Plaintiff also has had no prior

business relationship with Defendants.  Plaintiffs had no reason to be in contact

with Defendants nor have they ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

46.     Third, Plaintiff adequately pleads that the conduct was without his prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'"  *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12).  Establishing prior express consent of the called party "is an affirmative defense for which the defendant bears the burden of proof." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

47.     In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.* Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

48.     Similarly, in Plaintiff's case, the allegations establish that he did not give prior express consent. He declared that he was "the regular user and subscriber to the cellular telephone number at issue." He also declared that he has "never heard of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants to send the prerecorded messages. Furthermore, the calls promote the sender's carpet cleaning business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

49.     Fourth, Plaintiff sufficiently pleads that he was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*,

19CV

2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. §

227(b)(1)(A). A telephone service subscriber is the "called party" within the

meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL

3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011

U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here,

Plaintiff declares that he was "the regular user and subscriber to the cellular phone

number" that received the calls and messages.  Plaintiff is therefore the "called

party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

*Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S.

Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016).

## VI. FACTUAL ALLEGATIONS

### A. Stall

50.    One of STALL's strategies for marketing its services is placing

telemarketing robocalls to those who have not consented to receive such

solicitations, including Plaintiff.

51.    STALL uses equipment that has the capacity to store or produce random or

sequential telephone numbers to be called and that includes autodialers and

predictive dialers (each an "automatic telephone dialing system" or "ATDS").

52.    A third party sold leads to Stall and is the marketing agent for Stall.  STALL

knowingly advertises through STALL.  Each Defendant knows of and is aware of

each of the other Defendant's duties, responsibilities and function within the telemarketing operation.  Each Defendant is a co-conspirator with each other Defendant in this matter.  They all know each other, they all talk to eachother. They have all designed, planned and orchestrated the telemarketing scheme and scam together.

**B. Plaintiff**

53.    Plaintiff Anton Ewing and Plaintiff Collette Stark are, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153(39).

**C. Telephone numbers 619-719-9640 and 619-888-1296**

54.    A phone number beginning 619-719-9640 is registered to Mr. Ewing.

55.    619-719-9640 and 619-798-2016 are on the National Do Not Call Registry.

56.    Mr. Ewing answers calls made to 619-719-9640.

57.    Mr. Ewing pays the phone bills for 619-719-9640.

58.    619-272-0515 was paid for by Mr. Ewing and it is on the National Do Not Call Registry.

**F. STALL's Illegal Telemarketing Robocalls to Plaintiff**

59.    On February 7, 2019, a call to 619-719-9640, which is Mr. Ewing's cellular telephone, caused his cell phone to ring. Mr. Ewing picked up. The person on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all; it was a prerecorded voice. The voice advertised carpet cleaning service from STALL.

60.     Plaintiff has never heard of STALL and had not given them permission to call him, let alone with a telemarketing robocall. Mr. Ewing was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.  Previously, in December of 2018, a call to 619-719-9640 caused Mr. Ewing's cell phone to ring again.  Again it was a prerecorded voice, again advertising carpet cleaning, again from STALL's telemarketing call center.

61.     It didn't stop there. *STALL placed at least 9 telemarketing robocalls to Mr. Ewing.*  Calls in 2018 and 2019 often came from blocked lines.  The agent on the phone said he was with US GLOBAL and that he had agents on staff.  The agents said their names were Dave and Robert on the calls.

62.     Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Mr. Ewing that the call was placed by an ATDS rather than manually dialed by a person.

63.     More than a half dozen of STALL's telemarketing robocalls were made to Mr. Ewing while he was in California, in this District.

64.     More than a half dozen of STALL's telemarketing robocalls were made to Mr. Ewing after STALL knew of his desire to never been solicited via telemarketing calls, which is publicly known in this District.

19CV

65.     Mr. Ewing repeatedly asked STALL to stop calling.

66.     Due to the massive volume of robocalls made by Defendant STALL to him, Plaintiffs' investigation into the calls and their illegal features (e.g., prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing.

## VII. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

67.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

68.     The foregoing acts and omissions of STALL and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone numbers of Plaintiffs without prior express written consent.

69.     Each named defendant in this matter is vicariously liable for the acts and actions of each of the other named defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.

70.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

71.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

19CV

72.     Plaintiffs also seek a permanent injunction prohibiting STALL and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))

73.     Mr. Ewing and Ms. Stark reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

74.     The foregoing acts and omissions of STALL and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-888-1296 number of Mr. Ewing without prior express written consent.

75.     Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

76.     Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

77.     Mr. Ewing also seeks a permanent injunction prohibiting STALL, and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

78.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

79.     The foregoing acts and omissions of STALL and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

80.     Plaintiffs are entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

81.     Plaintiffs are entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

82.     Plaintiffs also seeks a permanent injunction prohibiting STALL and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

19CV

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Stall violate the TCPA, CIPA and the UCL;

C. An order enjoining STALL and STALL and its affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiffs of damages, as allowed by law under the TCPA, and not limited to the calls listed in the preliminary table above;

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting all Defendants from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

P. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

# XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  February 22, 2019

/S/ *Anton Ewing*
Anton Ewing, Plaintiff

/S/ Collette Stark
Collette Stark, Plaintiff

# Stark et al vs Stall

# EXHIBIT A

**Anton@AntonEwing.com**

**Subject:**                    FW: Appointment


**From:** Stuart Stall <oldrock@san.rr.com>
**Subject: Appointment**
**Date:** February 22, 2019 at 10:36:13 AM PST
**To:** "starkgifts@hotmail.com" <starkgifts@hotmail.com>

Collette,
My Global partner set an appointment for us on Saturday at 11:00. I have a previous appointment in Flint Springs at 10:00. I should be on the road by 10:30. I'll arrive at 2175 Cowley Way about 11:15-11:30. I'm working on data for you right now. I look forward to meeting.

"Your Home Sold GUARANTEED Or I'll Buy It"
Stuart Stall
BRE 01186080
MNLS 234979, 250811
619-867-2255
oldrock@san.rr.com

# EXHIBIT B

**Old Rock Realty | Stuart Stall**
619-867-2255 | Contact Me

HOME    FEATURED LISTINGS    SEARCH FOR HOMES    SEARCH BY AREA    CORONADO HOMES    ABOUT ME    CONTACT ME    Register    Login

BUYER/SELLER INFO





**List My House**

**Search for Homes**

**Home Evaluation**







**Stuart Stall**
Old Rock Realty
Coronado, CA 92118
**619-867-2255**
Contact Me
CalBRE#01186080

*Search for Homes*

| Type a city, zip, address, or MLS# | Bedrooms ▾ | Baths ▾ | Min Price ▾ | Max Price ▾ |

## Welcome

Welcome to the premier resource for all real estate information and services in the area. I hope you enjoy your visit and explore everything my realty website has to offer, including San Diego, North Park, South Park, Chula Vista, Coronado, Imperial Beach and the Surrounding Areas real estate listings, information for homebuyers and sellers, and more About Me.

Looking for a new home? Use Quick Search or Map Search to browse an up-to-date database list of all available properties in the area, or use my Dream Home Finder form and I'll conduct a personalized search for you.

If you're planning to sell your home in the next few months, nothing is more important than knowing a fair asking price. I would love to help you with a FREE Market Analysis. I will use comparable sold listings to help you determine the accurate market value of your home.

SEARCH BY AREA

FEATURED LISTINGS

DREAM HOME FINDER

FREE MARKET ANALYSIS

ABOUT ME



**What's Your Home Worth?**
Let us quickly and accurately
assess your home's current value.



**Search By Area**
Easy home search broken down
by area and price.



**Contact Me**
Have a question? Want more information?
Let's get in touch.

## Just Listed Homes in Coronado

VIEW ALL

         

| $4,998,000 | $1,290,000 | $1,399,000 | $2,295,000 | $4,500,000 | $2,999,888 | $3,995,000 | $5,100,000 | $1,985,000 | $3,39 |
|---|---|---|---|---|---|---|---|---|---|
| Coronado, CA | Coronado, CA | Coronado, CA | Coronado, CA | Coronado, CA | Coronado, CA | Coronado, CA | Coronado, CA | Coronado, CA | Coronad |

## LUXURY LISTINGS!

VIEW ALL

    



| $4,998,000 | $4,948,000 | $4,500,000 | $3,199,999 | $5,000,000 |
|---|---|---|---|---|
| CORONADO, CA | SAN DIEGO, CA | CORONADO, CA | SAN DIEGO, CA | SAN DIEGO, CA |

STUART STALL
OLD ROCK REALTY

Stuart Stall | CalBRE #01186080 | 619-867-2255 | Contact Me
667 Pomona Avenue - Coronado, CA 92118
Copyright © 2017, All Rights Reserved

This information is deemed reliable but not guaranteed. You should rely on this information only to decide whether or not to further investigate a particular property. BEFORE MAKING ANY OTHER DECISION, YOU SHOULD PERSONALLY INVESTIGATE THE FACTS (e.g. square footage and lot size) with the assistance of an appropriate professional. You may use this information only to identify properties you may be interested in investigating further. All uses except for personal, non-commercial use in accordance with the foregoing purpose are prohibited. Redistribution or copying of this information, any photographs or video tours is strictly prohibited. This information is derived from the Internet Data Exchange (IDX) service provided by the San Diego MLS®. Displayed property listings may be held by a brokerage firm other than the broker and/or agent responsible for this display. The information and any photographs and video tours and the compilation from which they are derived is protected by copyright. Compilation © 2019 San Diego MLS®, Inc.
Information last updated on 2019-02-07.

Real Estate Websites by   iHOUSEweb | Admin Menu

# EXHIBIT C

| | |
|---|---|
| **Number of Pages:** 1 | |
| **Doc Type:** | FBN - FICTITIOUS BUSINESS NAME STATEMENT |
| **# of Businesses:** | 3 |
| **# of Owners:** | 1 |
| **Fictitious Business Names:** | OLD ROCK OLD ROCK MORTGAGE OLD ROCK REAL ESTATE |
| **Registrant Name & Address:** | SEAN STUART M |
| **Business Conducted By:** | A - An Individual |
| **Business Begin Date:** | 1/1/2001 |
| **Expiration Date:** | 5/22/2018 |

# EXHIBIT D

**STATE OF CALIFORNIA**
**DEPARTMENT OF REAL ESTATE**

The license information shown below represents public information taken from the Department of Real Estate(DRE) database at the time of your inquiry. It will not reflect pending changes which are being reviewed for subsequent database updating. Also, the license information provided includes formal administrative actions that have been taken against licensees pursuant to the Business and Professions Code and/or the Administrative Procedure Act. All of the information displayed is public information. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

License information taken from records of the Department of Real Estate on 2/7/2019 6:24:32 AM

| | |
|---|---|
| License Type: | BROKER |
| Name: | Stall, Stuart Murray |
| Mailing Address: | 667 POMONA AVE<br>CORONADO, CA 92118 |
| License ID: | 01186080 |
| Expiration Date: | 10/04/20 |
| License Status: | LICENSED |
| MLO License Endorsement: | NMLS ID: 234979 (Click here to check the status of the MLO License Endorsement ) |
| Company MLO License Endorsement: | 250811 (Click here to check the status of the MLO License Endorsement.) |
| Salesperson License Issued: | 08/16/94 (Unofficial -- taken from secondary records) |
| Broker License Issued: | 10/05/00 |
| Former Name(s): | NO FORMER NAMES |
| Main Office: | 667 POMONA AVENUE<br>CORONADO, CA 92118-2212 |
| DBA | Old Rock<br>ACTIVE AS OF 10/05/2000<br><br>Old Rock Mortgage<br>ACTIVE AS OF 10/05/2000<br><br>Old Rock Real Estate<br>ACTIVE AS OF 10/05/2000 |
| Branches: | NO CURRENT BRANCHES |
| Affiliated Licensed Corporation(s): | NO CURRENT AFFILIATED CORPORATIONS |
| Salespersons: | 00921428 - Decker, Glenn Alan<br>License Expiration Date: 03/27/2022 |
| Comment: | NO DISCIPLINARY ACTION<br><br>NO OTHER PUBLIC COMMENTS<br><br>>>>> Public Information request complete <<<< |

# EXHIBIT E

**GLOBAL QUEST MARKETING AND LISTING SOFTWARE (/)**

Sellers (/sell-realestate)   Buyers (/real-estate-listings)   Loans (/loans)

Construction (/free-estimate)   Contact (/contact)



Home (/) » Free Appraisal Estimate, Property Value, Real Estate Listings, International Buyers



Site consultant ONLINE
Ask your question   (/dls/webim/client.php?
locale=en)

# Free Appraisal Estimate, Property Value, Real Estate Listings, International Buyers

Global Quest Marketing and Listing Software connects sellers, buyers, investors, licensed contractors, and licensed real estate professionals.

Get the highest market value, find listings, sell quickly, find real estate, schedule contractor estimates, save a lot of time, and maximize profits.

Call our US Global Referral and Relocation Service at 855-695-9500 to schedule appointments.

## SCHEDULE FREE APPRAISAL ESTIMATE OR CONSULTATION

Start                                          Complete

Contact Information

First Name *

Last Name *

Street Address *

City *

State/Province *   - Select -

Postal Code *

Phone Number *

Email *

Appointment Type *
- ☐ Buy Real Estate
- ☐ Sell Real Estate
- ☐ Refinance
- ☐ Remodel
- ☐ New Construction
- ☐ Leasing
- ☐ Purchase Loan

Appointment Date/Time - date *
2019 ▼   Feb ▼   8 ▼

Appointment Date/Time - time *
Hour ▼ :  Minute ▼   ⦿ am  ○ pm

Appointment Comments

**Start your real estate search**

Location:

City & State, or Zip or Address

Distance:

Only at location

Listing type:

For sale

Property type:

Any property type

Price range:

Minimum          Maximum

Beds:

Minimum

Keywords:

Keywords

Search | Login/Register

Please enter any additional comments.

Submit



**U.S. Global Marketing and Listing Service**

14 Wall Street
New York, NY 10005
(229) 518-1000

Email Web

powered by oodle

**Disclaimer:** Information deemed reliable but not guaranteed.
Please consult with the real estate professional for up-to-date listing information.

© 2019 Listing information is copyright of the respective listing broker or publisher and classifieds provided by C

POWERED BY
RealBird.com

- Appraisal Estimate (/appraisal-estimate)
- Sell Real Estate (/sell-realestate)
- Buy Real Estate (/real-estate-listings)
- Contractor Estimate (/free-estimate)
- Contact (/contact)
- Privacy (/privacy)
- Terms (/terms)

Equal opportunity and equal housing association.

Page Generated: Thursday, February 7, 2019 - 12:32

Copyright: 1994-2018, Global Quest Marketing and Listing Software

# EXHIBIT F



**Stuart Stall**
CEO/Team Leader
BRE#01156080

*Your Home Sold*
GUARANTEED *Conditions apply*
*Or I'll Buy It!*

**Call Stuart: (619) 435-2255**
... and Start Packing!

*Or for a FREE Report that Details this Exclusive Offer*

www.StusSaleGuarantee.com

# EXHIBIT G



*my*FirstAm®   **Property Profile**                    **667 Pomona Ave, Coronado, CA 92118**

## Property Information

| | | | |
|---|---|---|---|
| Owner(s): | Stall Stuart M | **Mailing Address:** | 667 Pomona Ave, Coronado, CA 92118 |
| Owner Phone: | Unknown | **Property Address:** | 667 Pomona Ave, Coronado, CA 92118 |
| Vesting Type: | Single Man | Alt. APN: | |
| County: | San Diego | APN: | 536-490-54-00 |
| Map Coord: | 65-B4 | Census Tract: | 010900 |
| Lot#: | | Block: | |
| Subdivision: | Coronado Beach South Island | Tract: | 6574 |
| Legal: | Par 1 Tr 6574 | | |

## Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Use: | Sfr | Year Built / Eff. : | 1985 / 1985 | Sq. Ft. : | 2810 |
| Zoning: | R-1:SINGLE | Lot Size Ac / Sq Ft: | 0.132 / 5771 | # of Units: | 1 |
| Bedrooms: | 4 | Bathrooms: | 4 | Fireplace: | |
| # Rooms: | | Quality: | | Heating: | |
| Pool: | | Air: | | Style: | Contemporary |
| Stories: | | Improvements: | | Parking / #: | Garage / 2 |
| Gross Area: | 2810 | Garage Area : | | Basement Area: | |

### Sale and Loan Information

| | | | | | |
|---|---|---|---|---|---|
| Sale / Rec Date: | 05/05/1997 / 06/02/1997 | *$/Sq. Ft.: | $123.31 | 2nd Mtg.: | |
| Sale Price: | $346,500 | 1st Loan: | $276,900 | Prior Sale Amt: | $340,000 |
| Doc No.: | 0000256915 | Loan Type: | Conventional | Prior Sale Date: | 04/09/1992 |
| Doc Type: | | Transfer Date: | 06/02/1997 | Prior Doc No.: | 0000274605 |
| Seller: | Mc Elhannon,Timothy S & Catherin | Lender: | Palomar Savings & Loan | Prior Doc Type: | |

*$/Sq.Ft. is a calculation of Sale Price divided by Sq.Feet.

### Tax Information

| | | | | |
|---|---|---|---|---|
| Imp Value: | $446,467 | Exemption Type: | Homestead | |
| Land Value: | $393,628 | Tax Year / Area: | 2018 / 2-002 | |
| Total Value: | $840,095 | Tax Value: | | |
| Total Tax Amt: | $9,440.24 | Improved: | 53% | |

---

This report is only for the myFirstAm user who applied for it. No one else can rely on it. As a myFirstAm user, you already agreed to our disclaimer regarding third party property information accuracy. You can view it here: www.myfirstam.com/Security/ShowEULA. ©2005-2019 First American Financial Corporation and/or its affiliates. All rights reserved.

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS109354
Cashier ID: asepulve
Transaction Date: 02/22/2019
Payer Name: STARK, COLLETE
-----------------------------------
CIVIL FILING FEE
 For: STARK, COLLETE
 Case/Party: D-CAS-3-19-CV-000366-AJB
 Amount:       $400.00
-----------------------------------
CASH
 Amt Tendered:  $400.00
-----------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.
```