UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLETTE STARK, ANTON EWING<br><br>Plaintiffs,<br><br>v.<br><br>STUART STALL,<br><br>Defendant. | Case No.: 19-CV-00366-AJB-NLS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 7)** |

Before the Court is Defendant Stuart Stall's motion to dismiss Plaintiff Collette Stark and Plaintiff Anton Ewing's First Amended Complaint, (Doc. No. 6), under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 7.) For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

## I. BACKGROUND

The following facts are taken from the Complaint and attached exhibits. They are construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Plaintiff alleges that during the period of December 2018 to February 2019, he received a series of unwanted phone calls from the phone number (844) 853-7355. (Doc. No. 6 at 7:14–16.) Approximately nine phone calls were received by Plaintiff on

various phone lines controlled by Plaintiff Ewing.[1] (*Id.*) Some of the phone calls began "with a prerecorded message that stated 'Hello, this is US Global Real Estate . . .'" followed by a live representative. (*Id.* at 7:18–19.) "Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning." (*Id.* at 29:10–11.) Plaintiff alleges that the purpose of these calls was to set real estate appointments. (*Id.* at 2:11–12.) Plaintiff also alleges that these same calls were intended to advertise carpet cleaning services. (*Id.* at 28:21.) Either way, Plaintiff maintains that he has never heard of the parties that called him or consented to their calls. (*Id.* at 28:22–23.)

Attached to Plaintiff's initial complaint is a copy of an email[2] from Defendant Stall to Stark dated February 22, 2019, in which Defendant writes, "My Global partner set an appointment for us on Saturday at 11:00." (Doc. No. 1 at 34.) Defendant further advises details of when he will arrive at Stark's address and that he is "working on data for [Plaintiff Stark] right now." (*Id.*) The copy of the email indicates that it was forwarded to Ewing. (*Id.*) No context for the message or explanation as to how Defendant received Stark's information is included. The Complaint alleges that Defendant appeared at Ewing's home in early February 2019, and at Stark's home on February 23, 2019. (Doc. No. 6 at 2:27–3:4.)

On February 22, 2019, Plaintiffs filed their initial complaint with the Court. (Doc. No. 1 at 1.) On March 20, 2019, Plaintiffs filed a first amended complaint "as of right," pursuant to Fed. R. Civ. P. 15. (Doc. No. 6 at 1–2:2.) The Complaint alleges three causes of action under 47 U.S.C. § 227, which is also known as the Telephone Consumer Protection Act ("TCPA"). (*See* Doc. No. 6.) Defendant filed the instant motion to dismiss

---

[1] The called phone numbers assigned to Plaintiff Ewing are (619) 719-9640, (619) 798-2016, and (619) 888-1296. (Doc. No. 6 at 28:5–12.)

[2] In light of Plaintiffs' pro se status, the Court has liberally construed the pleadings and looked to the exhibits provided to decipher the claim and factual background. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (pro se pleadings are liberally construed).

on April 3, 2019. (Doc. No. 7.)

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers" because pro se litigants are more prone to making errors in pleading than litigants represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations omitted); *see Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute on other grounds*, *Lopez*, 203 F.3d at 1126–30 (9th Cir. 2000). Thus, the Supreme Court has held that federal courts should liberally construe the "'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)). However, pro se plaintiffs are expected to follow

"the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *see also Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) ("[W]hile pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer."). Thus, failure to meet procedural requirements will receive less latitude.

## III. DISCUSSION

Defendant requests dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court also raises, sua sponte, several issues regarding the Complaint. The Court discusses each in turn below.

### A. Standing as to Stark

To sue in federal court, a plaintiff must establish standing under the "case or controversy" requirement under Article III of the U.S. Constitution. *Sec. & Exch. Comm'n v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972). Standing is an essential element of a federal court's subject matter jurisdiction. *City of S. Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980). Three elements must be satisfied for a plaintiff to have standing under Article III: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Because Article III standing is a threshold jurisdictional requirement that can be raised at any time during a suit, any jurisdictional issues must be settled prior to the court considering the merits of any case. *Villegas v. United States*, 963 F. Supp. 2d 1145, 1153 (E.D. Wash. 2013).

Plaintiffs' Complaint almost entirely focuses on alleged wrongful telephone calls placed to Ewing. Stark's name is only mentioned in conjunction with Ewing. No specific

factual allegations are made as to any phone number that is owned by Stark. Further, no mention is made of Stark ever answering any specific phone call whatsoever. The only factual allegations relating to Stark are that she communicated with Defendant via email and in person. (Doc. No. 6 at 3:4–5.) The fact that Stark interacted with Defendant is insufficient to constitute an injury in fact under of the causes of action in the Complaint. As such, Stark is **DISMISSED** from the Complaint based on her lack of standing. The remainder of this order will analyze the Complaint as it pertains to Ewing.

### B. Striking Portions of the Complaint

Under Federal Rule of Civil Procedure 12(f), on its own or by motion, the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney—Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). The Court must view the pleadings "in the light most favorable to the non-moving party." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

Plaintiff's response to the instant motion to dismiss includes, as "Exhibit A," a second amended complaint. (Doc. No. 10 at 12–46.) Plaintiff's understanding of Fed. R. Civ. P. 15 is demonstrated in the opening of his Complaint when he states that the first amended complaint was filed within 21 days as of right. (Doc. No. 6 at 1:25–2:2.) Fed. R. Civ. P. 15 states that "[a] party may amend its pleading once as a matter of course . . . ." It goes on to dictate that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff has not sought Defendant's written consent or the Court's leave to file his second amended complaint. It is also improper and impractical to interject an amended complaint into a response to a motion to dismiss. This improper procedural move creates unfair confusion for all entities involved.

Further, Exhibit A adds no information to the Complaint that affects the Court's

5

19-CV-00366-AJB-NLS

analysis regarding Defendant's motion to dismiss. What it does add are allegations of rude communications made by Defendant to Plaintiff. If considered to be true for purposes of this motion, Plaintiff's allegations may constitute a violation of the local rules. *See* CivLR 83.4.a.1.a. However, a complaint is not a proper pleading for Plaintiff to address this issue. Rudeness between the parties outside of the pleadings is not pertinent to the issue of whether the Complaint states a claim upon which relief can be granted. As such, Exhibit A in Plaintiff's response is **STRICKEN** from the pleadings.

Turning to the body of Plaintiff's response, (Doc. No. 10), lines seven through 14 on page four allege that Defendant made a derogatory remark about Plaintiff in the motion to dismiss in violation of Civil Local Rule 83.4. Plaintiff cites to Defendant's statement that Plaintiff Ewing is ". . . a serial pro se litigator who has been deemed a vexatious litigant by the Superior Court of California . . . ." (Doc. No. 7-1 at 2.) Plaintiff's name does, in fact, appear on California's Vexatious Litigant List. *Vexatious Litigant List*, Judicial Council of California, http://www.courts.ca.gov/documents/vexlit.pdf (last visited August 2, 2019). Plaintiff cannot claim that any time someone refers to his published status within another court system, they have made a derogatory remark in violation of the local rules. Lines seven through 14 on page four and the associated footnote are hereby **STRICKEN** from the pleadings as immaterial, impertinent, and scandalous matter. (*See* Doc. No. 10 at 4:7–14, and footnote.)

Page four line 24 through page five line six of the response, (Doc. No. 10 at 4:24–5:6), discuss a "settlement offer" made by Defendant. The question of whether a federal, common law settlement privilege exists has yet to be decided by the United States Court of Appeals for the Ninth Circuit. The Sixth Circuit has, however, recognized a settlement privilege. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). Their reasoning for the privilege is, in part, as follows:

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a

6

> more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications.

*Id.* Federal Rule of Evidence 408 dictates that an offer of consideration in exchange for compromise of a claim is not ultimately admissible to prove the validity of a claim. The local rules also require that parties "[a]ttempt to informally resolve disputes with opposing counsel." CivLR 83.4.a.1.d.

The Court will not reach the question of whether the settlement offer made by Defendant to Plaintiff is privileged. The Court discusses the policy behind treatment of settlement communications to inform on the question of whether Defendant's offer is pertinent to Plaintiff's claim. The Court finds that it is not. The statements outlined by Plaintiff do not show culpability on Defendant's part, but rather a simple offer of information in exchange for resolution of the claim. (Doc. No. 10 at 4:24–5:6.) Finding it to be impertinent to the case, the Court **STRIKES** page four line 24 through page five line six of Plaintiff's response, (Doc. No. 10).

In the argument section of his response to Defendant's motion to dismiss, Plaintiff states the following:

> Defendant argues at Page ID.111, lines 12-13, that "Ewing has not alleged any facts showing that Defendant employed or controlled any third-party callers, so there can be no vicarious liability." That statement by Stall is a bold-face lie. The motion should be denied on this basis alone. It is sickening that Stall can actually make this statement to the Court and not be sanctioned.

(Doc. No. 10 at 5:10–16.) Plaintiff has been placed on notice of the local rules on professionalism and their applicability to him by this Court in the past. *See Ewing v. Flora*, No. 14cv2925 AJB (NLS), 2015 U.S. Dist. LEXIS 194169, at *23 (S.D. Cal. Mar. 25, 2015). The local rules require that attorneys "[b]e courteous and civil in all communications, oral and written, and in all proceedings conduct herself/himself with dignity and respect." CivLR 83.4.a.1.a. Defendant's statement is a legal argument and not

7

a "bold-face lie" deserving of sanctions as Plaintiff asserts.[3] Finding it to be impertinent to the case and scandalous, the Court **STRIKES** the above-cited portion of Plaintiff's response.

All parties are hereby reminded of the local rules requiring courtesy and civility in all communications, oral and written. If either party feels that they must seek the intervention of the Court to address impropriety, they should do so through the proper procedures.

### C. Failure to Join an Indispensable Party

Federal Rule of Civil Procedure 19(a)(1) provides that persons are required to be joined, where feasible, if in that person's absence, the court cannot accord complete relief among existing parties. The Rule further provides that a party must be joined where disposing of the action in the person's absence may impair the person's ability to protect their interest. Fed. R. Civ. Pro. 19(a)(1)(B)(i). "The absence of 'necessary' parties may be raised by reviewing courts sua sponte." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991) (citations omitted).

Here, Plaintiff pleads facts about a company identified as "US Global," which was hired by Defendant and is the entity that actually placed the telephone calls. Plaintiff also refers to multiple defendants at times throughout the Complaint but only formally names Defendant Stall in this case. Plaintiff did, however, include what appears to be a print-out of a website listing that contains contact information for "U.S. Global Marketing and Listing Service" as Exhibit E to his initial complaint. (Doc. No. 1 at 43–44.)

The Court cannot accord complete relief without US Global as a named party to this case. Proceeding without US Global would also impede their ability to protect their interest in the outcome of this case. Resolution of this case in favor of Plaintiff would require findings that US Global's actions were unlawful. Further, a finding that Defendant Stall acted unlawfully would only be binding on Defendant and would not grant the complete

---

[3] The Court discusses the merit of this argument below at section D.

relief that Plaintiff seeks. As such, US Global, and not solely Defendant Stall, must be provided with notice of the action and an opportunity to respond.

### D. Agency Theory

Plaintiff alleges that the relationship between Defendant and US Global is such that Defendant is liable for violations of the TCPA committed by US Global. "[T]he TCPA imposes vicarious liability where an agency relationship, as defined by federal common law, is established between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014). The Ninth Circuit has described the requisite relationship as follows:

> "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (Am. Law Inst. 2006). For an agency relationship to exist, an agent must have authority to act on behalf of the principal and "[t]he person represented [must have] a right to control the actions of the agent." Restatement (Third) Of Agency § 1.01, cmt. c (Am. Law Inst. 2006).

*Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).

Plaintiff's FAC lacks the *factual* allegations that would be required to establish an agency relationship between Defendant and US Global. Setting aside the numerous conclusory statements that Plaintiff makes, few factual allegations remain as to the nature of the relationship. Plaintiff alleges that "Stall hired and paid a company by the name of US Global to set real estate appointments for Stall[,]" and that "Stall paid US Global $3,900 plus 20% of his real estate broker commissions for 60 leads (appointments) per year." (Doc. No. 6 at 2:11–16.) Plaintiff then goes on to make several legal conclusions including that "Stall knows that US Global engages in telemarketing to obtain real estate leads for Stall." (*Id.* at 2:17–18.)

The Court need not accept legal conclusions as true. *See Iqbal*, 556 U.S. at 678. The Court, further, cannot assume Plaintiff can prove facts that he has failed to allege. *See*

9

19-CV-00366-AJB-NLS

*Assoc. Gen. Contractors*, 459 U.S. at 526. Item E in the FAC, (*Id.* at 2:22–23), illustrates the issue of deciphering between legal conclusions and factual allegations. Plaintiff states that "Stall is vicariously liable for the illegal acts of the agents he knowingly hired and paid to make illegal calls in violation of the TCPA." (*Id.*) This is a clear legal conclusion. The FAC is devoid of facts that would properly allege that Defendant directed and had the power to compel US Global to make telephone calls on his behalf that violate the TCPA. The facts, as they stand, only allege that Defendant paid US Global to set real estate appointments for him.[4] (*Id.* at 2:11–12.) The facts, as opposed to the conclusions, do not show that Defendant is empowering US Global to violate the TCPA in order to acquire the appointments.

Plaintiff also alleges, for example, that "Stall controlled US Global by requiring them to give Stall real estate lead within zip code 92110 . . ." and that "Stall required US Global to ask specific questions on each telemarketing call." (*Id.* at 4:27–5:5.) While these allegations are vague, if taken as fact they only show that Defendant was able to have some control over the types of appointments that US Global was setting for him. The allegations do not show that Defendant had any control over how US Global initially acquired the leads.

Contrary to Plaintiff's conclusion that the courts "have held that Stall is vicariously liable for the acts of US Global in TCPA matters[,]" (*Id.* at 3:8–11) the law establishes that a principal can be liable for the actions of their agent where an agency relationship exists according to the federal common law. *Gomez*, 768 F.3d at 877. Here, Plaintiff has not alleged sufficient facts to establish a plausible claim that there is a common-law agency relationship between Defendant and US Global. Therefore, for this reason as well as the reasons previously analyzed by the Court, Defendant's motion to dismiss is **GRANTED**.

---

[4] Plaintiff also states that US Global is advertising Defendant's carpet cleaning services. The Court remains unclear on whether it is alleged that Defendant is a real estate agent, a carpet cleaner, or both.

## IV. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) guides the Court to grant leave to amend freely when justice so requires. While Plaintiff Ewing falls outside of the policy justifications for granting leniency to pro se plaintiffs, the current state of the law in the Ninth Circuit also guides the Court to grant leave to amend. *See Jourdan*, 951 F.2d at 109. However, if Plaintiff elects to file a second amended complaint, he must comply with the local rules, the Federal Rules of Civil Procedure, and the analysis set out in this order.

Plaintiff is specifically, but not exclusively, reminded that Rule 8 of the Federal Rules of Civil Procedure states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It is well settled that dismissal is proper where a complaint is "argumentative, prolix, replete with redundancy, and largely irrelevant[,]" *McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996), or where filings are confusing, conclusory, and unnecessarily voluminous. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985). The 41 pages of Plaintiff's FAC are redundant, conclusory, unnecessarily voluminous, and highly confusing. While the Court has declined to dismiss Plaintiff's Complaint on these grounds at this stage, any amended complaint filed by Plaintiff must comply with Rule 8's "short and plain statement" clause and the cited caselaw.

Subject to the requirements set out in this order and special requirements that have been put in place for Plaintiff Ewing in the Southern District,[5] the Court **GRANTS** Plaintiff leave to amend.

## V. CONCLUSION

For the reasons stated above, the Court **ORDERS** the Court Clerk to strike the following:

---

[5] Beginning May 29, 2019, for a period of 36 months, Plaintiff Ewing is required to file a copy of the order issued by Judge Burns in *Ewing v. Oasis Media, LLC* with any new pleading filed in the Southern District. *Ewing v. Oasis Media, LLC*, No. 18cv1455-LAB (JLB), 2019 U.S. Dist. LEXIS 90887 (S.D. Cal. May 29, 2019).

- Doc. No. 10 – Exhibit A;
- Doc. No. 10 at page 4, lines 7–14, and the accompanying footnote;
- Doc. No. 10 at page 4, lines 24–28, to page 5, lines 1–6; and
- Doc. No. 10 at page 5, lines 10–16.

The Court also **DISMISSES** Plaintiff Stark from the case for failure to show standing. The Court **GRANTS** Defendant's motion to dismiss finding he fails to add an indispensable party and fails to allege an agency relationship between Defendant and US Global. (Doc. No. 7.) Finally, the Court **GRANTS** Plaintiff leave to amend as instructed in this Order. Plaintiff's Second Amended Complaint is due by **August 31, 2019**.

**IT IS SO ORDERED.**

Dated: August 7, 2019

Hon. Anthony J. Battaglia
United States District Judge